STATE BOARD TAX COMMISSIONERS *v.* TRUSTEES, ADONIRAM LODGE, SCOTTISH RITE.

[No. 767A36. Filed September 17, 1969. Rehearing denied October 23, 1969. Transfer denied January 15, 1970.]

*John J. Dillon,* Attorney General, *Lloyd C. Hutchinson* and *James B. Droege,* Deputies Attorney General, for appellants.

*Alan H. Lobley, Leonard J. Betley* and *Ice Miller Donadio & Ryan,* of counsel, of Indianapolis, for appellees.

HOFFMAN, J.—This is an appeal by the State Board of Tax Commissioners of the State of Indiana and the members thereof from a judgment of the Marion Superior Court, Room

5, setting aside the order of the State Board of Tax Commissioners denying appellees, Trustees of Adoniram Lodge of Perfection, 14°, Ancient Accepted Scottish Rite, Valley of Indianapolis, N.M.J., owners, occupiers and operators of the real property, improvements and personal property known as the Scottish Rite Cathedral, in Indianapolis, Indiana, exemption from taxation for 1965, under the property tax exemption laws of the State of Indiana.

From a denial of such exemption by appellant-Board, an appeal was taken to the Marion Superior Court, Room 5. The trial court entered its findings of fact and conclusions of law pursuant to the rules of the Supreme Court of Indiana. Thereafter, the trial court rendered its judgment vacating and setting aside the decision of the State Board of Tax Commissioners denying the application for exemption and remanded the cause to appellant-Board for further proceedings in accordance with law.

Appellants assign as error the overruling of their motion for new trial which specified that the court's findings and decision were contrary to law and not sustained by sufficient evidence, and that the court erred in its conclusions of law.

The Trustees of Adoniram Lodge of Perfection, 14°, Ancient Accepted Scottish Rite, Valley of Indianapolis, N.M.J., own the property here in question and hold it solely for the purposes of the Ancient Accepted Scottish Rite and for the benefit of other Masonic organizations. The same is used, with insignificant exceptions, exclusively in furtherance of their purposes. Some of the principles of the Ancient Accepted Scottish Rite are contained in the following declarations:

"This Supreme Council affirms its unswerving loyalty to the fundamental purpose and principles of Freemasonry.

"It understands that purpose to be the improvement and strengthening of the character of the individual man, and through the individual of the community.

"It believes that this purpose is to be attained by laying a broad basis of principle upon which men of every race, country, sect, and opinion may unite, rather than by setting

up a restricted platform upon which only those of certain races, creeds and opinions can assemble.

"Believing that good and wise men can be trusted to act well and wisely, it considers it the duty of the Fraternity to impress upon its members the principles of personal righteousness and personal responsibility, to enlighten them as to those things which make for human welfare, and to inspire them with that feeling of charity, or well-wishing, toward all mankind which will move them to translate principle and conviction into action.

"To that end, it teaches and stands for the worship of God, for truth and justice, liberty and enlightenment, fraternity and philanthropy."

In the year 1965, appellee made charitable contributions in the amount of $39,897.73, being more than its net income for that year. These contributions were either public charitable contributions or private charitable contributions to members of Masonic organizations.

Appellee owns other adjacent real estate upon which it claims no exemption. Exemptions had been granted upon the property in question in all prior years.

The law involved is: Acts 1919, ch. 59, § 5, p. 198, as last amended at the time of the filing of this action by Acts 1965, ch. 227, § 1, p. 541, § 64-201, Burns 1961 Repl., which reads, in pertinent part, as follows:

"The following property shall be exempt from taxation:

\* \* \* \* \*

"Fifth. Every building, or part thereof, used and set apart for educational, literary, scientific, religious or charitable purposes by any institution or by any individual or individuals, association or incorporation, provided the same is owned and actually occupied by the institution, individual, association or incorporation using it for such purpose or purposes, and every building owned and occupied, used and set apart for educational, literary, scientific, fraternal or charitable purposes by any town, township, city or county, and the tract of land on which such building is situate, including the campus and athletic grounds of any education[al] institution not exceeding fifty [50] acres; also the lands purchased with the bona fide intention of erecting

buildings for such use thereon, not exceeding forty [40] acres; also the personal property endowment funds, and interest thereon, belonging to any such institution or any town, township, city or county and connected with, used or set apart for any of the purposes aforesaid."

And Acts 1919, ch. 59, § 6, p. 198, § 64-202, Burns 1961 Repl., which reads as follows:

"If all or any part, parcel or portion of any tract or lot of land or any buildings or personal property enumerated in the preceding section as exempt from taxation shall be used or occupied for any other purpose or purposes than those recited in said section by reason whereof they are exempted from taxation, such property, part, parcel or portion shall be subject to taxation so long as the same shall not be set aside or used exclusively for some one of the purposes specified in said enumeration."

If the property here in question comes within this Act it is exempt.

The Supreme Court of Nebraska in *Ancient, Etc., S.R. of Freemasonry* v. *Board of Co. Com'rs.*, 122 Neb. 586, 241 N. W. 93, at page 95, 81 A.L.R. 1166, (1932), stated:

". . . 'Masonry falls entirely, without exception, within the three categories of charity, educational purpose, and religious purpose. It has no other function or purpose and does no other work.' Further, that the statements thus made 'may be fully verified in every particular by reference to a large body of masonic literature available to any one who is interested in studying it, open to everybody, representing the best masonic thought for centuries back in time.'

"It further appears that these results are accomplished by and through the teachings of its rituals as employed in the conferring of its degrees, and in the transaction of its business, as well as by its literature."

And, further, at pages 99-100 of 241 N. W., the court stated:

"In this jurisdiction it is not the character of the owner but the nature of its use which must in each individual case furnish the test for determining the tax exempt character of the property involved. If that use be truly and exclusively religious, or exclusively educational, or exclusively chari-

table, or a combination of the three uses, and involves no other use, for the reasons expressed in the cases cited, we are not concerned as to whether it be strictly a public charity or a private charity in the technical sense of these terms. (Citing authorities.)

"So, too, we are committed to the doctrine that, in determining whether or not property falls within a tax exemption provision, the primary or dominant use, and not an incidental use, will control. (Citing authorities.)

"It follows that it fairly appearing from the evidence that the ownership as well as the primary and dominant use to which the Temple was devoted, at and for a number of years prior to the assessment of the taxes in suit, were exclusively for educational, religious, and charitable purposes, and that it was not owned or used for financial gain or profit to either owner or user, the district court erred in denying the claim for exemption."

Our Supreme Court has held that the Masonic order, which includes the Scottish Rite, is a charitable institution. In *City of Indianapolis* v. *The Grand Master, &c., of the Grand Lodge of Indiana*, 25 Ind. 518, at page 522 (1865), the court stated:

"The third paragraph of the answer presents the question whether that is a charitable institution, in the sense of the statute, which confines its benefactions to those who have become members of the *Masonic* order, having paid the fees commonly required for that purpose? We think that this question must be answered in the affirmative. It is not essential to charity that it shall be universal. That an institution limits the dispensation of its blessings to one sex, or to the inhabitants of a particular city or district, or to the membership of a particular religious or secular organization, does not, we think, deprive it either in legal or popular apprehension of the character of a charitable institution. If that only be charity which relieves human want, without discriminating amongst those who need relief, then indeed it is a rarer virtue than has been supposed. And if one organization may confine itself to a sex, or church, or city, why not to a given confraternity? So narrow a definition of charity as the third paragraph presupposes is not, that we are aware of, ever attached to it, and we are not at liberty to circumscribe the effect of the statute, and defeat its intention, by affixing to its terms an unusually limited meaning."

Therefore, Adoniram Lodge of Perfection, 14°, Ancient ■ Accepted Scottish Rite, Valley of Indianapolis, N.M.J., is an educational, religious and charitable organization.

However, our exemption statute is based upon the use of the property as well as ownership.

The evidence adduced at the trial and the findings of the trial court clearly show that the property was used, with insignificant exceptions, for the furtherance of educational, religious and charitable purposes of the appellee.

Thus, the property of appellee known as the Scottish Rite Cathedral falls within the category of exempt property as set out in § 64-201 (Fifth), *supra.*

There has been no change in legislation relating to the fundamental parts of the property tax exemption statute since 1919. There have been amendments but these have not changed prior to legal or administrative interpretations of the exemption statute.

The appellants urge that the 1963 amendment changed prior law pertaining to exemptions. The amendment changed no substantive law regarding exemptions, but changed only the procedure for obtaining an exemption, and expressly gave the State Tax Board the authority to review these exemptions. This review was to determine *factually* whether or not the property was within the statute allowing exemption. It did not give the State Tax Board the right to change the Constitution of Indiana or the statute as interpreted by the courts.

There has been a clear administrative interpretation of the exemption statute regarding Masonic organizations and a clear acquiescence by the Legislature in that interpretation. That interpretation has been that real property owned, occupied, operated, and used by a Masonic body for the furtherance of its purposes falls within the definition of exempt property as set out in § 64-201, *supra.*

In 1944, the Attorney General, at the request of the State Board of Tax Commissioners, issued an opinion in which he

reviewed court decisions and past interpretations and practice of exempting property of Masonic and other similar organizations when the property was used for the purpose of the organization. In this opinion he interpreted the exemption statute to include property of Masonic organizations owned, occupied and used for its purposes.

This interpretation has been followed and adhered to for more than 20 years by those agencies dealing with tax exemptions. The Legislature has not, to date, changed the substantive law regarding such exempt property which shows a clear acquiescence of this interpretation. *Baker* v. *Compton*, 247 Ind. 39, 211 N. E. 2d 162 (1965).

Although such interpretation placed upon a statute may not be binding upon the court if such interpretation is clearly incorrect, it is entitled to considerable weight when it is necessary for the court to make an interpretation of a statute. *Baker* v. *Compton, supra.*

We can see no valid reason why the administrative interpretation acquiesced in by the Legislature should not prevail.

Property of Masonic bodies, which are educational or religious or charitable organizations or a combination of the three, owned, occupied, operated and used for its purposes is within the definition of exempt property under § 64-201, *supra.*

The facts as found by the trial court are amply supported by the evidence as given in this cause and the reasonable inferences therefrom. The court properly applied the law to those facts and did not err in its conclusion.

On March 29, 1967, appellants filed their motion for a new trial but submitted no memorandum in support of the grounds that the findings and decision were not sustained by sufficient evidence or were contrary to law. On March 1, 1967, Rule 1-14B, Rules of the Supreme Court of Indiana, became effective. Thus, appellants' motion for new trial falls within the ambit of such rule and appellants have waived any alleged

error for insufficiency of evidence or being contrary to law. *Anderson* v. *Irwin,* 142 Ind. App. 302, 234 N. E. 2d 276 (1968).

No reversible error having been presented to this court, the judgment of the trial court is affirmed.

Judgment affirmed and costs taxed according to law.

Pfaff, C.J., and Sharp, J., concur. White, J., not participating.

NOTE.—Reported in 250 N. E. 2d 605.