INDIANA STATE BOARD OF TAX
COMMISSIONERS, Appellant,

v.

FRATERNAL ORDER OF EAGLES,
LODGE NO. 255, Appellee.

No. 80S05–8703–TA–349.

Supreme Court of Indiana.

April 15, 1988.

Linley E. Pearson, Atty. Gen., James R. Green, and Joel Schiff, Deputy Attys. Gen., Indianapolis, for appellant.

Thomas J. Simmons, Simmons & Fleming, Kokomo, for appellee.

GIVAN, Justice.

Appellee filed an application for property tax exemption for the year 1983 with the Howard County Auditor. The Howard County Board of Review disallowed the claim for exemption. Appellee petitioned appellant for review of that decision. Appellant denied appellee's petition for exemption.

■ Appellee then initiated this action pursuant to Ind.Code § 6–1.1–15–5 by filing its complaint against appellant requesting the Tax Court to review the decision made by appellant denying appellee's application for exemption of its real property. The Tax Court found for the appellee, reversed the determination of appellant, and remanded the case to appellant with instructions to grant appellee's application for property tax exemption for the year 1983, 512 N.E.2d 491. This is an appeal from that decision.

The facts are: On March 1, 1983, appellee was the owner of real property, commonly known as 1221 East Lincoln Road in Kokomo, Indiana. The land consisted of 6.8 acres. On the land there was a lodge building consisting of: a social room, dining room, lodge room, bowling alley, card and game room, and an office. In addition to the lodge building, there was also a covered pavilion on the land. For some ten years prior to 1983, appellee had applied for and received a property tax exemption. The record shows that appellee, the Fraternal Order of Eagles, Lodge No. 255, is a fraternal organization.

In its petition for tax exemption, the appellee stated its reasons for exemption to be:

"To strengthen the bonds of fraternalism and social activities between members. To promote patriotic, humanitarian and fraternal teaching of the F.O.E.

and to incul[c]ate among the members a sense of service to their state and to their nation.

To work and raise funds for charitable and humanitarian funds set up specifically for the purpose by the F.O.E."

The evidence shows appellee's gross income was approximately $438,000 earned from the use of the property. This was broken down as follows: $228,000 from the sale of food; $200,000 from the sale of drinks; $5,000 from playing of bingo; and $5,000 from bowling. It was estimated that appellee contributed approximately $12,160 or 2.8% of its gross income in charitable donations.

There was also evidence in the record that in addition to appellee's exemption for the ten years prior to 1983 other Eagle Lodges had received similar consideration. The finding of appellant was that the "buildings and land are not used predominantly for charitable purposes; but instead are used predominantly for the relaxation and benefit of its members."

Appellant claims the trial court erred in that it misapplied the doctrine of legislative acquiescence.

■ We are favored with a lengthy and scholarly opinion by Judge Fisher in which he accurately traces the development of the doctrine of legislative acquiescence. In the beginning of his opinion, Judge Fisher points out that the appellee does not argue that the evidence presented at the hearing does not support appellant's determination. He parenthetically observes that if that were the only issue on the evidence presented, appellant would prevail.

As Judge Fisher correctly points out later in the opinion, this observation is borne out by the case of *Indianapolis Elks Building Corporation v. State Board of Tax Commissioners* (1969), 145 Ind.App. 522, 251 N.E.2d 673. There can be little doubt that appellee does not qualify for tax exemption under the provisions of Ind.Code § 6–1.1–10–23. However, Judge Fisher rendered his decision upon the basis of legislative acquiescence.

Judge Fisher cites the case of *Baker v. Compton* (1965), 247 Ind. 39, 211 N.E.2d 162. This was an adoption case turning on the point that the administrative agency had furnished instructions and forms that did not fully comply with the mandates of the statute, yet this modification of the procedure by the administrative agency had never been challenged. The Court invoked the doctrine of legislative acquiescence.

The Court noted:

"[A] long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change having been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts." *Id.* at 42, 211 N.E.2d at 164.

We note here that the *Baker* court added that such an interpretation would not be binding if it were incorrect.

Judge Fisher also cites *State Board of Tax Commissioners v. Wright* (1966), 139 Ind.App. 370, 215 N.E.2d 57 in which the doctrine was used to construe the precursor to Ind.Code § 6–1.1–10–16. In that case, the question was whether cabins which were used to house ministers who were attending church conferences were being used exclusively for religious purposes. As in the case at bar, the claims for exemption had never been questioned in previous years. The court determined that this was a matter of legislative acquiescence.

However, upon rehearing, the court clarified its statement by holding that the administrative interpretation was not mere inaction on the part of the State Board alone but the "practice" of local assessing officials and local county boards of review as well as the State Board in failing to question previous claims for exemptions. The court pointed out that it did not use legislative acquiescence as a sole determinative factor in the case, but that it looked to other cases to determine whether the cabins were being "exclusively used" for exemption purposes. They merely used

the doctrine as an aid in statutory construction.

The court applied the doctrine in the case of *State Board of Tax Commissioners v. Methodist Home for the Aged* (1968), 143 Ind.App. 419, 241 N.E.2d 84. However, in that case the court applied the doctrine based upon an interpretation by the Indiana Attorney General. The court decided that, although not binding, the Attorney General's opinion was on point and had not been challenged by the legislature for forty-five years, thus they would apply the doctrine. The same general situation prevailed in *State Board of Tax Commissioners v. Adoniram Lodge of Perfection* (1969), 145 Ind.App. 300, 250 N.E.2d 605.

In *State Board of Tax Commissioners v. Warner Press, Inc.* (1969), 145 Ind.App. 20, 248 N.E.2d 405, the taxpayer had entered into an agreement with the local assessing officials, the County Board of Review, and the State Board with regard to the exempt status of particular property. This agreement had been in effect for eleven years. The court held that this amounted to an administrative interpretation of the exemption statute.

In *Whirlpool Corporation v. State Board of Tax Commissioners* (1975), 167 Ind.App. 216, 338 N.E.2d 501, the doctrine was applied. The facts were that the taxpayer had claimed exemption without incident since 1962. In 1965, the statute was amended and the claim was challenged. After a hearing, the Tax Board ultimately ruled in favor of the taxpayer. The exemption remained unchallenged from 1966 to 1968. In 1969, it was again denied although the statute had not been amended. The doctrine was applied and the State Board's denial of exemption was ruled to be arbitrary, capricious and an abuse of discretion.

In *State Board of Tax Commissioners v. Carrier Corporation* (1977), 266 Ind. 615, 365 N.E.2d 1385, this Court applied the doctrine using the same reasoning the Court of Appeals had applied in *Whirlpool,* holding that the State Board, by its actions, had acquiesced in the exemption and was therefore estopped to deny it. In so doing,

the Court observed that no privity was required to raise a legislative acquiescence argument. Thus the administrative ruling issued by the board for *Whirlpool* in 1965 could be considered an administrative interpretation applicable to the *Carrier* case.

In the case of *Indiana Department of Revenue v. Glendale–Glenbrook Associates* (1981), Ind., 429 N.E.2d 217, the taxpayer sought exemption under the Gross Income Tax Act. After a 1969 amendment of the act, the taxpayer was notified they were then subject to the tax. They protested, and after a hearing the department issued findings which stated that the taxpayer was not subject to the tax. Three years later the taxpayer was notified that the prior ruling had been overruled. The case was decided on other grounds, but the doctrine of legislative acquiescence was recognized.

In the case of *Citizens Action Coalition v. Northern Indiana Public Service Company* (1985), Ind., 485 N.E.2d 610, *cert. denied,* 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687, the Public Service Commission had for some seventy years allowed amortization of abandoned plants. During that time, the legislature had never changed the utility statute. The Court thus applied the doctrine but distinguished "cancelled" from "abandoned" plants. The Court again stated that incorrect administrative decisions are not binding and that basically the doctrine is a tool of statutory construction.

We observe that two principles stand out in the above cases:

1) Either the administrative board takes affirmative action in the interpretation of a statute or it allows to stand an interpretation which appears to at least arguabiy follow the tenets of the statute;

2) The Court has consistently held that erroneous administrative decisions do not give rise to the application of the doctrine.

In *Indiana Department of State Revenue v. General Foods Corporation* (1981), Ind.App., 427 N.E.2d 665, 671, Judge Sullivan wrote a concurring opinion in which he stated that he did not agree with the lan-

guage taken from *Whirlpool, supra* in which the court stated:

"'The legislature therefore must be deemed to have acquiesced in the exemption and under the guidance of *Baker v. Compton, supra,* such acquiescence is binding and controlling herein.'"

He observes:

"[T]he majority opinion implies that once an administrative agency has construed a statute, it may never change its interpretation unless the statute has been amended by the General Assembly. Such implication would require an agency to adhere to an erroneous interpretation of the law and await either a legislative or judicial correction."

Judge Sullivan is especially persuasive when one considers that courts have consistently held that incorrect administrative interpretations do not invoke the doctrine of legislative acquiescence.

There can be little doubt from the facts stated in this record that this case closely parallels *Indianapolis Elks Building Corporation, supra* in its factual setting. The percentage of income (2.8) given as charitable donations can hardly be claimed to cloak the appellee with charitable immunity. When one measures this against the various recreational activities, above set out, engaged in by appellee on the premises, it can hardly be said that they comply with the statute nor do they come within the ruling of *Sahara Grotto v. Styx, Inc. v. State Board of Tax Commissioners* (1970), 147 Ind.App. 471, 261 N.E.2d 873.

In that case, the Court of Appeals reversed the State Board but in so doing held that the buildings and grounds dedicated to recreational activity could not be claimed as tax exempt. However, the reversal was for the reason that the evidence showed considerable charitable activity, intermingled with the recreational activity, which was not given due consideration by the State Board. The court remanded the case for readjustment to give tax exemption credit for that portion of activity which could be considered charitable.

In the case at bar, there is no evidence of such activity. The small amount of charitable contribution engaged in by appellee is no more than is engaged in by many businesses and individuals.

Although the Tax Court has done a scholarly job in the preparation of its opinion, we hold that invoking the doctrine of legislative acquiescence upon the facts in the case at bar overbroadens its scope. We share Judge Sullivan's trepidation that to so broaden the doctrine would be to trap administrative agencies in their own mistakes and in the absence of legislative change would force them to continue their errors *ad infinitum.*

We would further observe that in applying the doctrine courts should carefully analyze the result. If, for instance, in the case at bar the legislature had become alarmed by the fact the taxing authorities were allowing appellee to enjoy a tax free status, what would have been their course of action? The wording of the statute clearly did not apply to appellee's situation. The taxing authorities simply were not following the statute in that instance. Is the legislature to more firmly enact the same general principle? Are they to pass legislation to specifically correct a single situation?

In cases where the doctrine has been applied, there has generally been administrative interpretation of ambiguous statutory language. We find the same situation in judicial interpretation of statutes. In either case, we find legislative acquiescence when the legislature is apprised of the interpretation of the ambiguous language and does nothing. When this occurs, the interpretation stands until the legislature acts to the contrary. In the case at bar, it is difficult to perceive what action the legislature could have taken if they had so chosen.

The Indiana Tax Court is reversed and the decision of the Indiana State Board of Tax Commissioners is affirmed.

DeBRULER and PIVARNIK, JJ., concur.

SHEPARD, C.J., and DICKSON, J., dissent without separate opinion.